## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| **PETER A. SCHROEDER**, individually and on behalf of all others similarly situated, | JURY TRIAL DEMANDED |
| | CLASS ACTION COMPLAINT |
| Plaintiff, | |
| vs. | No. 1:17-cv-4750 |
| **APPLE INC.**, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff, Peter A. "Pete" Schroeder, by counsel, individually and on behalf of all others similarly situated, alleges as follows:

### NATURE OF THIS ACTION

1. This is a class action seeking injunctive relief and damages arising from Defendant Apple Inc.'s unlawful failure to inform consumers that updating their iPhone versions prior to the iPhone 8 (the "Legacy Devices") to iOS 10.2.1 (and/or later to iOS 11.2) would dramatically and artificially reduce the performance of the Legacy Devices. Apple also failed to inform consumers that phone performance would be restored—by as much as 70 percent—if affected individuals simply replaced the phone's lithium-ion battery. Replacing the battery at an Apple store costs approximately $79. The cost of the new iPhone X is over $1,000.

2. Batteries "wear" over time. The lithium-ion battery used by Apple slowly diminishes its ability to hold a charge with time and use. However, normal

lithium-ion battery wear does not reduce performance; a weakening battery has no effect on performance unless there is software that links the two. And that is precisely what Apple did.

3. In rolling out iOS 10.2.1, Apple claimed to provide "bug fixes and improve[ ] the security of [the] iPhone or iPad" and "improve[ ] power management during peak workloads to avoid unexpected shutdowns on the iPhone."[1] What Apple purposefully failed to disclose, however, was that the update would act as a latent time-bomb that slowly eroded the phone's performance to the frustration of the user—the software update throttled the iPhone's performance.

4. The effect of Apple's actions was to a) purposefully reduce device performance with time, and b) deprive consumers of material information concerning the cause of the decline in performance of the Legacy Devices.

5. Plaintiff and the Class he seeks to represent in this lawsuit are consumers who purchased the Legacy Devices and installed the relevant upgraded operating system software. This lawsuit is brought to challenge Apple's deceptive consumer sales practices, trespass to chattels, breach of the duty of good faith and fair dealing, and breach of implied contract.

## PARTIES

6. Plaintiff Peter A. "Pete" Schroeder is a citizen of Indiana, and lives in Indianapolis. He purchased a Legacy Device. Mr. Schroeder upgraded to iOS 10.2.1

---

[1] Download iOS 10.0 – iOS 10.3.3 Information, Apple Inc., https://support.apple.com/kb/DL1893?locale=en_US (last visited Dec. 27, 2017).

and has since suffered material and increasing degradation in the performance of his iPhone.

7. Defendant Apple Inc. ("Apple") is a California resident, being a California corporation headquartered at 1 Infinite Loop, Cupertino, California. Apple designs, manufacturers, and sells a wide range of products, including mobile devices such as iPhones, throughout the world.

## JURISDICTION

8. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of a class of plaintiffs is a citizen of a State different from any defendant.

9. This Court has personal jurisdiction over Apple because: (1) Apple has systematic and continuous contacts within this State because it systematically and continuously does business in this state and communicates via telephone, mail, and the internet with persons in this State in furtherance of its activities; and (2) Apple consummated the transactions at issue in this case within this State thereby purposefully availing itself of the privilege of conducting business within this State, and Plaintiff's and Class members' claims arise out of Apple's in-State activities.

## FACTUAL ALLEGATIONS

10. Plaintiff and Class Members are Apple iPhone users. Many Class Members are not new to the iPhone franchise, but are loyal followers of Apple, having purchased various iterations of the mobile device.

11. On January 23, 2017, Apple released iOS 10.2.1. The update specifically addressed aging batteries, and expressly represented that the purpose was to prolong the useful life of the Device. Apple promised to "deliver the best experience for customers, which includes overall performance and prolonging the life of their devices."[2]

12. For example, the update specifically sought to prevent the handset from shutting down if a performance spike drew too much power—i.e., turning off unexpectedly as if the phone was dead while the phone's battery still had a charge. While the battery issue was a reported problem at the time,[3] the iOS update did far more than address shutdowns on those few phones that experienced shutdowns – it also surreptitiously and purposefully throttled the performance speed on Legacy Devices by as much as 70 percent.

13. Furthermore, the update did not even fully address the purported battery "shutdown" issue on all devices: 20 percent of iPhone 6s and 30 percent of iPhone 6 devices that previously experienced unexpected shut down issues continued to experience those issues, according to a statement released by Apple.[4]

---

[2] Jason Koebler, A*pple Throttles iPhones that Have Old Batteries (But Didn't' Tell You About It)*, Motherboard (Dec. 20, 2017), https://motherboard.vice.com/en_us/article/3k5bdw/apple-throttles-iphones-bad-batteries?utm_source=vicefbus (last visited Dec. 27, 2017).

[3] A Message from Apple about iPhone and Unexpected Shutdowns, Apple, Inc. (June 12, 2016), https://support.apple.com/zh-cn/HT207414 (last visited Dec. 27, 2017)

[4] Matthew Panzarino, *Apple says IOS 10.2.1 has reduced unexpected iPhone 6s shutdown issues by 80%*, Techcrunch (Feb. 23, 2017), https://techcrunch.com/2017/02/23/apple-says-ios-10-2-1-has-reduced-unexpected-iphone-6s-shutdown-issues-by-80/ (last visited Dec. 27, 2017).

At the time the iPhone 7 was not impacted. However, it is now known that the feature at the center of the iOS 10.2.1 update was later extended to iPhone 7 with the release of iOS 11.2, and will be added to other products in the future.

14.   Apple also informed consumers that for those who need it, a message will appear on the screen inside Settings if that phone's "battery needs service." Apple did this to "add a bit more transparency to people wondering when Apple considers the battery worn down enough to get swapped out." Apple even offered consumers tips regarding when to swap out a battery.[5]

15.   However, despite all of these disclosure opportunities, Apple never informed consumers that the 10.2.1 update reduced unexpected phone shutdowns by slowing the device's performance dramatically.

16.   Moreover, consumers experiencing these issues were never notified by Apple (as it represented it would) that "the [device's] battery needs service."

17.   Because Apple failed to informed consumers that the performance issues were artificially caused by the iOS update in conjunction with an older (but still perfectly functional) battery, consumers were denied the opportunity to make an informed decision regarding whether to upgrade their device or instead simply replace the battery.

18.   Apple's failure to disclose the impact of the iOS update 10.2.1 (and the later iOS 11.1) and remedy the issues it produced (and purported to resolve)

---

[5] *Maximizing Battery Life and Lifespan*, Apple Inc., https://www.apple.com/batteries/maximizing-performance/ (last visited Dec. 27, 2017).

constitutes a deceptive consumer sales practice and breach of the covenant of good faith and fair dealing implied in Apple's contracts with Plaintiff and the class. Plaintiff and the class were harmed as a direct and proximate result of Apple's actions.

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action individually and on behalf of all others similarly situated, as members of a nationwide class preliminarily defined as:

> All consumers who (a) reside in the United States, (b) owned an Apple Legacy Device and upgraded to iOS 10.2.1 or a later version prior to the date of this Complaint, and (c) who purchased that iPhone within the United States.

In addition, Plaintiff brings this action on behalf of an Indiana sub-Class preliminarily defined as:

> All consumers who (a) reside in the Indiana, (b) owned an Apple Legacy Device and upgraded to iOS 10.2.1 or a later version prior to the date of this Complaint, and (c) who purchased that iPhone within the United States.

20. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

21. The class consists of hundreds of thousands or more persons, such that joinder of all Class members is impracticable.

22. There are questions of law and fact that are common to the Class members that relate to Apple's uniform conduct.

23. The claims of the Plaintiff are typical of the claims of the proposed Class because they are based on the same legal theories, and Plaintiff has no interests that are antagonistic to the interests of the Class members.

24. The Plaintiff is an adequate representative of the Class and has retained competent legal counsel experienced in class actions and complex litigation.

25. The questions of law and fact common to the Class predominate over any questions affecting only individual Class members, particularly because the focus of the litigation will be on the conduct of Apple. The predominant questions of law and fact in this litigation include, but are not limited to:

   a. Whether iOS 10.2.1 in fact affected device performance;

   b. Whether Apple purposefully designed iOS 10.2.1 to affect device performance or otherwise did so knowingly;

   c. The extent to which iOS 10.2.1 affected device performance;

   d. Whether and to what extend Apple disclosed the effect of iOS 10.2.1 on device performance;

   e. Whether the aspects of iOS 10.2.1 affecting device performance were extended to iOS 11.2; and

   f. Whether Apple notified customers that the artificial reduction in device performance could be remedied by simply replacing the battery.

26. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of hundreds of individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the

common issues of the Class members to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based on an identical set of facts.

27. This proposed class action does not present any unique management difficulties.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF INDIANA'S DECEPTIVE CONSUMER SALES ACT

28. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

29. The purposes and policies of the Indiana Deceptive Consumer Sales Act (the "DCSA" or the "Act"), Indiana Code § 24-5-0.5-1 to -12, are to:

(1) simplify, clarify, and modernize the law governing deceptive and unconscionable consumer sales practices;

(2) protect consumers from suppliers who commit deceptive and unconscionable consumer sales practices; and

(3) encourage the development of fair consumer sales practice.

Ind. Code § 24-5-0.5-1(b).

30. The Indiana General Assembly has instructed courts to construe the DCSA liberally to promote these purposes and policies. Ind. Code § 24-5-0.5-1(a).

31. Apple is a "supplier" as defined in the DCSA because it is a seller or other person who regularly engages in or solicits consumer transactions, which are defined to include sales of personal property, services, and intangibles that are primarily for a personal, familial, or household purpose, such as those at issue in this action. Ind. Code § 24-5-0.5-2(1), (3).

32. The DCSA provides that "[a] supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of [the DCSA] whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." Ind. Code § 24-5-0.5-3(a).

33. Apple committed deceptive acts as described above, including but not limited to surreptitiously affecting the performance of the Legacy Devices after purchase.

34. Apple's violations were willful and were done as part of a scheme, artifice, or device with intent to defraud or mislead, and therefore are incurable deceptive acts under the DCSA. The violations were formulated and carried out by Apple as part of a business model focused on driving sales of newer model iPhones and other products.

35. The DCSA provides that "[a] person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater. The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of: (1) three (3) times the actual damages of the consumer suffering the loss; or (2) one thousand ($1,000). Ind. Code § 24-5-0.5-4(a)

36. The DCSA provides that "[a]ny person who is entitled to bring an action under subsection (a) on the person's own behalf against a supplier for

damages for a deceptive act may bring a class action against such supplier on behalf of any class of persons of which that person is a member . . . ." Ind. Code § 24-5-0.5-4(b).

## SECOND CAUSE OF ACTION
## TRESPASS TO CHATTELS

37. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

38. State common law prohibits the intentional intermeddling with personal property in the possession of another, without consent, that results in either the impairment of the condition, quality, or value of the personal property or the deprivation of use of the personal property for a substantial time.

39. Defendant impaired the condition, quality and usefulness of the Plaintiff's and Class Members' Legacy Devices, or parts of them, without their knowledge or consent. Such acts constituted an intentional interference with the use and enjoyment of the devices.

40. Defendant acted intentionally, because it knew that Plaintiff and Class Members were downloading computer software to their Legacy Devices that reduced the performance of the devices. Plaintiff and the other Class Members only consented to the installation of software that would improve performance, not diminish performance.

41. Defendant engaged in deception to gain access to the Legacy Devices and install the new computer software.

42. Plaintiff and other Class Members thus suffered actual damages as a result of Defendant's actions in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

43. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

44. In every contract or agreement there is an implied promise of good faith and fair dealing under common law.

45. In dealings between Apple and its customers, Apple has power affecting the rights of its users.

46. Apple entered into a contract with Plaintiff and the Class at the time of purchase of each Legacy Device, and at the time of download of iOS 10.2.1 and later iOS versions.

47. Apple contractually promised in the iOS 10.2.1 update and later updates to "deliver the best experience for customers, which includes overall performance and prolonging the life of their devices."

48. Plaintiff did all, or substantially all, of the things that the contracts required him to do.

49. Despite its contractual promises to prolong the life of the devices, Apple instead purposefully took actions to reduce the life of the devices, and purposefully failed to notify customers that replacing the battery would restore performance that had been artificially throttled by iOS 10.2.1 and later updates to iOS.

50. Apple's actions were objectively unreasonable given Apple's promises.

51. Apple's conduct evaded the spirit of the bargain made between Apple and the Plaintiff.

52. As a result of Apple's misconduct and breach of its duty of good faith and fair dealing,

53. Plaintiff and the Class suffered damages. Plaintiff and the Class members did not receive the benefit of the bargain for which they contracted and for which they paid valuable consideration.

### FOURTH CAUSE OF ACTION
### BREACH OF IMPLIED CONTRACT

54. Plaintiffs incorporate the substantive allegations contained in each and every paragraph of this Complaint.

55. Defendant solicited and invited Plaintiff and the members of the Class to buy new iPhones. Plaintiff and Class Members accepted Defendant's offers and bought iPhones from Defendant.

56. When Plaintiff and Class Members bought iPhones from Defendant, they paid for their iPhones. In so doing, Plaintiff and Class Members entered into implied contracts with Defendant to which Defendant agreed to not purposefully interfere with Plaintiff and Class Members' usage or speed of the device.

57. Each purchase made with Defendant by Plaintiffs and Class Members was made pursuant to the mutually agreed-upon implied contract with Defendant under which Defendant agreed to not purposefully interfere with Plaintiffs and Class Members' usage or value of their iPhones.

58. Plaintiffs and Class Members would not have bought iPhones from Defendant in the absence of the implied contract between them and Defendant.

59. Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendant.

60. Defendant breached the implied contracts it made with Plaintiff and Class Members by purposefully slowing down older iPhone models when new models come out and by failing to properly disclose that at the time of that the parties entered into an agreement.

61. As a direct and proximate result of Defendant's breaches of the implied contracts between Defendant and Plaintiff and Class Members, Plaintiff and Class Members sustained actual losses and damages as described in detail above.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff, individually and on behalf of all others similarly situated, respectfully requests:

A. Certification of the Class requested above and appointment of the Plaintiff as the Class Representative and his counsel as Class Counsel;

B. An order and/or judgment enjoining Defendant from writing programs to throttle device performance without disclosure;

C. An order and/or judgment requiring Defendant to transparently notify customers when device performance can be restored by the installation of a new battery;

D. An order and/or judgment requiring Defendant to make restitution to Plaintiff of money that may have been acquired by means of Defendant's unfair practices;

E. An order and/or judgment awarding Plaintiff and the Class Members all statutory and/or punitive damages permitted by law;

F. An order granting reasonable attorneys' fees and costs, as well as pre- and post-judgment interest at the maximum legal rate; and

G. Such other and further relief as the Court finds just and proper.

### JURY DEMAND

Plaintiffs, by counsel, demand trial by jury.


Dated: December 28, 2017　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　　　*/s/ Richard E. Shevitz*
　　　　　　　　　　　　　　　　　　　　Irwin B. Levin, No. 8786-49
　　　　　　　　　　　　　　　　　　　　Richard E. Shevitz, No. 12007-49
　　　　　　　　　　　　　　　　　　　　Vess A. Miller, No. 26495-53
　　　　　　　　　　　　　　　　　　　　Lynn A. Toops, No. 26386-49A
　　　　　　　　　　　　　　　　　　　　COHEN & MALAD, LLP
　　　　　　　　　　　　　　　　　　　　One Indiana Square, Suite 1400
　　　　　　　　　　　　　　　　　　　　Indianapolis, IN 46204
　　　　　　　　　　　　　　　　　　　　Telephone: (317) 636-6481
　　　　　　　　　　　　　　　　　　　　Fax: (317) 636-2593
　　　　　　　　　　　　　　　　　　　　ilevin@cohenandmalad.com
　　　　　　　　　　　　　　　　　　　　rshevitz@cohenandmalad.com
　　　　　　　　　　　　　　　　　　　　vmiller@cohenandmalad.com
　　　　　　　　　　　　　　　　　　　　ltoops@cohenandmalad.com

　　　　　　　　　　　　　　　　　　　　**Counsel for the Plaintiff and Proposed Class**